UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                          :

CHUNYUNG CHENG, SHIGUANG CHEN, and   :
MARCIANO E. ESPINAL, *on their own behalf and on*   :
*behalf of others similarly situated*,              :

                         :

              Plaintiffs,         :

                         :

        -v-                  :

                         :

VIA QUADRONNO LLC, VIA QUADRONNO 88   :
STREET, ANTICA BOTTEGA DEL VINO, KING   :
CHUNG LAM a/k/a KC LAM, XIU YONG CHEN, and   :
John Doe and Jane Doe,              :

                         :

             Defendants.      :

                         :

------------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _11/17/2022_

20-cv-8903 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Defendants Via Quadronno LLC, Via Quadronno 88 Street, Antica Bottega Del Vino,

King Chung Lam a/k/a KC Lam, and Xiu Yong Chen (collectively, "Defendants") move,

pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment and pursuant to

Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings. Dkt. No. 107.

Defendants also move to decertify the Fair Labor Standards Act ("FLSA") collective and to

strike the jury demand. Dkt. No. 107. For the reasons stated below, the motion is granted.

## BACKGROUND

      This is a labor law action brought under the Fair Labor Standards Act of 1947 and the

New York Labor Law ("NYLL"). The following facts are drawn from the third amended

complaint, Dkt. No. 93 ("Third Amended Complaint"), and from Defendants' Rule 56.1

statement, Dkt. No. 111, and are undisputed except as otherwise indicated.

Defendants Via Quadronno LLC ("Via Quadronno"), Via Quadronno 88 Street ("VQ88"), and Antica Bottega Del Vino ("Antica Bottega") are restaurants located in the Upper East Side neighborhood in New York, New York.  Dkt. No. 93 ¶¶ 20, 25, 35–39.  Antica Bottega closed permanently in late 2014.  Dkt. No. 111 ¶ 12.  VQ88 closed permanently in late 2017.  *Id.* ¶ 17.  Via Quadronno closed temporarily in March 2020 because of the COVID-19 pandemic and did not reopen until early May 2020.  *Id.* ¶¶ 24–25.

Plaintiff Chunyung Cheng ("Cheng") worked at Antica Bottega, Via Quadronno and VQ88 as a chef, making panini and salads.  *Id.* ¶¶ 10–11, 13–16, 18–19.  Cheng worked at Antica Bottega in 2014 until sometime in September 2014.  *Id.* ¶¶ 10–11.  Cheng commenced working at VQ88 in September 2014 and continued working there through 2015 and 2016.  *Id.* ¶¶ 13–14.  In addition, starting in approximately February 2016, Cheng began working one or two days per week at Via Quadronno.  *Id.* ¶ 15.  Cheng began working exclusively at Via Quadronno in approximately January 2018 and continued working there until March 16, 2020.  *Id.* ¶¶ 18–19.

Plaintiff Shiguang Chen ("Chen," and, together with Cheng, the "Original Plaintiffs") worked as a chef making panini and salads at Via Quadronno from 2014 until March 16, 2020.  *Id.* ¶¶ 20–21.

Plaintiff Marciano E. Espinal ("Espinal") was a dishwasher at Via Quadronno from 2014 until March 15, 2020.  *Id.* ¶¶ 22–23.

Plaintiffs allege, *inter alia*, that Defendants failed to pay them overtime pay under the FLSA and the NYLL and failed to provide them required wage notices under the NYLL.

## PROCEDURAL HISTORY

Cheng and Chen filed this case on October 26, 2020 as a putative FLSA collective action and Rule 23 class action lawsuit on behalf of themselves and all other current and former non-

exempt employees employed by Defendants from November 2022 through the date of judgment. Dkt. No. 4.[1]  Plaintiffs asserted claims for failure to pay overtime under the FLSA, *id.* ¶¶ 82–87, and the NYLL, *id.* ¶¶ 88–92, and failure to provide time-of-hire wage notices under the NYLL, *id.* ¶¶ 93–95.  Plaintiffs named Via Quadronno, VQ88, and Antica Bottega and two individual defendants "John" Lam a/k/a KC Lam, and Yong "Doe."  *Id.*

Plaintiffs filed an amended complaint on February 19, 2021, Dkt. No. 24, and a second amended complaint on July 19, 2021, Dkt. No. 46.

On September 23, 2021, the Court issued an Opinion and Order granting Plaintiffs' motion for the conditional certification of a FLSA collective action.  Dkt. No. 50.  On January 3, 2022, opt-in plaintiff Espinal filed a consent to become a party plaintiff in this case under the FLSA.  Dkt. Nos. 65, 66.  No other persons filed consents.

On March 25, 2022, Plaintiffs filed a motion for leave to file a Third Amended Complaint and to add Espinal as a named plaintiff.  Dkt. No. 84.  The Court ruled on that motion on April 25, 2022.  Dkt. No. 92.  The Court denied the motion except insofar as Plaintiffs sought to add Espinal as a named plaintiff and to add claims for unpaid wages under federal and state law and failure to deliver wage notices under the NYLL on his behalf.  *Id.* at 6.  The Court found no good cause to permit plaintiffs to assert new claims under the NYLL on behalf of Cheng and Chen for failure to pay spread-of-hours pay, failure to provide meal periods, failure to keep records, and failure to provide time-of-hire wage notices.  *Id.* at 10.

Plaintiffs filed their Third Amended Complaint on May 2, 2022.  Dkt. No. 93.  On July 20, 2022, Defendants filed the instant motion.  Dkt. No. 107.  Plaintiffs filed a memorandum of

---

[1] The complaint was entered by the Clerk of Court on October 27, 2020.  Dkt. No. 4.

law in opposition to the motion on August 19, 2022.  Dkt. No. 115.  On August 31, 2022,

Defendants filed a reply memorandum of law.  Dkt. No. 116.

## LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed but early

enough not to delay the trial.  *See* Fed R. Civ. P. 12(c).  Claims in an amended complaint are

properly dismissed "where the court granted leave to amend for a limited purpose and the

plaintiff filed an amended complaint exceeding the scope of the permission granted."  *See Palm

Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43–44 (2d Cir. 2012) (citing cases).

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of

'demonstrat[ing] the absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In deciding a motion for summary judgment, the

Court must "construe the evidence in the light most favorable to the non-moving party, and draw

all reasonable inferences in its favor."  *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73

(2d Cir. 2016).

## DISCUSSION

Defendants argue: (1) they should be granted judgment on the pleadings to the extent that

the Third Amended Complaint purports to assert claims other than those for unpaid overtime and

failure to deliver wage notices under the NYLL; (2) Antica Bottega should be granted summary

judgment on the grounds that Plaintiffs' claims against it are time-barred; (3) Defendants should

be granted summary judgment dismissing Plaintiff Espinal's claims for failure to pay minimum

wage and overtime compensation; (4) the FLSA collective should be decertified; and (5) the Rule 23 class allegations should be stricken.

The Court addresses each issue in turn.

**I.    Defendants' Motion for Judgment on the Pleadings Dismissing Plaintiffs' New Claims for Alleged Failure to Pay Minimum Wage and Spread-of-Hours Compensation and Failures to Provide Wage Statements**

Plaintiffs' Third Amended Complaint filed on May 2, 2022, asserts claims for (1) failure to pay minimum wage and unpaid wages, Dkt. No. 93 ¶¶ 109–113 (Count I); (2) failure to pay overtime wages under the FLSA, *id.* ¶¶ 114–121 (Count II); (3) failure to pay overtime wages in violation of the NYLL, *id.* ¶¶ 122–127 (Count III); (4) failure to deliver time-of-hire wage notices in violation of the NYLL, *id.* ¶¶ 128–131 (Count IV); (5) failure to pay spread-of-time pay in violation of the NYLL, *id.* ¶¶ 132–34 (Count V); and (6) failure to provide wage statements in violation of the NYLL, *id.* ¶¶ 135–37 (Count VI).  Defendants move for judgment on the first, fifth and sixth counts alleged in the Third Amended Complaint on the grounds that they go beyond the leave to amend granted by the Court in its April 25, 2022 Order.

In its April 25, 2022 Order, the Court carefully considered the claims that the Original Plaintiffs would be permitted to present in a Third Amended Complaint.  *See* Dkt. No. 92.  The Original Plaintiffs' complaint, first amended complaint, and second amended complaint asserted claims only for failure to pay overtime pay in violation of the FLSA and NYLL and failure to provide time-of-hire wage notices.  *See* Dkt. Nos. 4, 24, 46.  The Court rejected the Original Plaintiffs' motion to add claims beyond those added on behalf of Espinal for overtime wages and failure to deliver time-of-hire wage notices.  Specifically, the Court found that there was no good cause for Cheng and Chen to assert claims for spread-of-hours pay, failure to provide meal periods, and failure to keep records.  *Id.* at 10.  The Court also did not permit the Original Plaintiffs to amend their complaint to include their failure to provide wage statements claim.  As

the Court concluded, the Original Plaintiffs "made no showing why Chen and Cheng themselves would not have known the pay they received and what notices they were given before filing the proposed amended complaint." *Id.* If Plaintiffs had a quarrel with that conclusion, their remedy was to ask the Court for reconsideration, not to add the prohibited claims in the Third Amended Complaint.

Accordingly, Defendants' motion is granted and the first, fifth and sixth counts in the Third Amended Complaint are dismissed. *See Palm Beach Strategic Income,* 457 F. App'x at 43–44; *Paloma v. New York City Dep't of Corr.*, 2020 WL 3547019, at *2 (S.D.N.Y. June 29, 2020).[2]

## II. Defendants' Motion for Summary Judgment Dismissing All Claims Against Antica Bottega Del Vino As Time-Barred

Defendants argue that all claims against Antica Bottega should be dismissed as time-barred.

The statute of limitations under the NYLL is six years. N.Y. Lab. L. § 663(3). The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations. 29 U.S.C. § 255(a). *See Cortese v. Skanska Koch, Inc.*, 2021 WL 429971, at *13 (S.D.N.Y. Feb. 8, 2021).

The only Plaintiff who worked at Antica Bottega was Cheng, who worked there until sometime in September 2014. Dkt. No. 111 ¶¶ 10–11. The other Plaintiffs never worked at Antica Bottega and Antica Bottega closed permanently in late 2014. *Id.* ¶ 12. The complaint was filed on October 26, 2020, more than six years after Cheng ceased to work there. Dkt. No.

---

[2] Defendants also move to dismiss Count VI for lack of standing under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Dkt. No. 108 at 17–18. Because the claim was not properly included in the Third Amended Complaint, the Court has no occasion to address that argument.

4.  Accordingly, Cheng's claims are time-barred under both the FLSA and NYLL and Antica Bottega is entitled to summary judgment.

Plaintiffs do not dispute that Cheng was the only person who worked at Antica Bottega and that he ceased working for that establishment more than six years before the complaint was filed.  Dkt. No. 115 at 2.  Plaintiffs nonetheless argue that the action against Antica Bottega is not time-barred because both Cheng and Chen—who worked at Via Quadronno—received earning statements through mid-2016 showing that they were paid by Via Quadronno with an address of 7 East 59th Street, the same address as Antica Bottega.  *Id.* at 1, 2, 7.

That evidence fails to create a genuine issue of material fact sufficient to overcome Defendants' motion for summary judgment.  The complaint alleges that Antica Bottega, defined as a New York business corporation with an address of 7 East 59th Street in New York, New York, was "Plaintiff's employer," Dkt. No. 93 ¶ 24, that Cheng was hired as a chef at Antica Bottega from October 2009 to August 31, 2014, *id.* ¶ 36, and that "Defendants" failed to pay plaintiffs overtime compensation, *id.* ¶¶ 121, 124.  There is no allegation of fact that, during the relevant time period, the three restaurants operated as joint employers or operated as a single integrated enterprise.  *See Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586–87 (S.D.N.Y. 2020).[3]  Indeed, it is undisputed that Antica Bottega closed permanently in late 2014, before the time covered by the FLSA and NYLL claims against Via Quadronno and VQ88.  Dkt. No. 111 ¶ 12.  Plaintiffs proffer no evidence that Antica Bottega had any of the authority with respect to Via Quadronno or VQ88 that would be necessary to make it the employer of the

---

[3] The Court denied Plaintiffs leave to add allegations to the complaint that the Defendants acted as a single integrated enterprise, finding that such allegations were conclusory and thus legally insufficient.  Dkt. No. 92 at 9.

persons who worked at those other two restaurants.  Accordingly, Defendants are entitled to summary judgment dismissing the claims against Antica Bottega.

III.    **Defendants' Motion for Summary Judgment Dismissing Plaintiff Espinal's Claims for Alleged Failures to Pay Minimum Wage and Overtime Compensation**

Defendants move for summary judgment on Plaintiff Espinal's second and third claims for relief, alleging that Via Quadronno failed to pay him at a rate of at least one-and-one half times the regular rate of pay for work performed in excess of forty hours per week in violation of the FLSA and NYLL.  Defendants argue that Espinal's timecards and wage statements, together with his testimony, establish that he was paid at or about the statutory minimum wage rate at all times and that he was paid an overtime premium for all hours that he worked over forty hours in any workweek.  Dkt. No. 108 at 16.

"Both the FLSA and New York law require employers to compensate each employee at a premium rate, based on the particular employee's 'regular rate,' for hours worked in excess of 40 per week."  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005) (first citing 29 U.S.C. § 207(a)(1) for the proposition that "covered employers must pay covered employees 'at a rate not less than 1.5 times the regular rate' for hours in excess of 40", and then citing N.Y. Comp. Codes R. & Regs. tit. 12, § 138–2.2 for the proposition that "employers must pay nonresidential employees 'at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of' 40"); *see Viera v. City of New York*, 512 F. Supp. 3d 461, 466 (S.D.N.Y. 2021); *Keawsri v. Ramen-Ya Inc.*, 2021 WL 3540671, at *19 (S.D.N.Y. Aug. 10, 2021).  "The regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'"  *Doo Nam Yang*, 427 F. Supp. 2d at 338 (quoting *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945)); *see Li v. SMJ Constr. Inc.*, 2022 WL 4463225, at *5 (S.D.N.Y. Sep. 26, 2022).  The statutory scheme for overtime purposes

of the FLSA and NYLL are essentially the same.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("[T]he NYLL adopts this same standard" as the FLSA).

Espinal was a dishwasher at Via Quadronno from 2014 until March 15, 2020.  Dkt. No. 111 ¶¶ 22–23.  Defendants assert in their Rule 56.1 statement that Espinal was paid a regular hourly rate of $11.00 per hour and an overtime rate of $16.50 per hour from December 2014 through March 31, 2016.  Dkt. No. 111 ¶¶ 44, 46, 48.  From March 31, 2016 through May 24, 2017, Espinal was paid a regular hourly rate of $12.00 and an overtime rate of $18.00.  *Id.* ¶¶ 49, 51.  From May 25, 2017 through December 26, 2018, Espinal was paid a regular hourly rate of $13.00 and an overtime rate of $19.50.  *Id.* ¶¶ 52, 54.  From December 27, 2018 through the end of his employment in March 2020, Espinal was paid a regular hourly rate of $15.00 and an overtime rate of $22.50.  *Id.* ¶ 56.  At all times, the hourly rate Espinal was paid exceeded the minimum hourly wage rate in New York City for large employers.  *Id.* ¶¶ 45, 47, 50, 53, 55, 57. Accordingly, Espinal was paid his overtime premium rate in compliance with federal and New York State law and Defendants are entitled to summary judgment on his FLSA and NYLL overtime claims.

In their opposition and in their counter Rule 56.1 statement, Plaintiffs do not dispute that at all times Espinal was paid a regular hourly rate in excess of the New York City minimum wage and that his overtime wage rate was one and one-half times his regular hourly rate.  *See* Dkt. No. 114-31 ("Counter 56.1 Statement") ¶¶ 44, 46, 48, 49, 51, 52, 54, 56; Dkt. No. 115 at 9– 10.  Plaintiffs assert, instead, that Espinal's wage statements undercount his hours and that as a result he was underpaid with regard to both his regular hourly pay and his overtime pay.  Dkt. No. 115 at 9.  Plaintiffs argue that Espinal's time cards recorded time in terms of hours and

minutes during which he worked, those hours and minutes were incorrectly converted into decimals when he was paid.  As a result, for example, when Espinal worked thirty-four hours and sixteen minutes one week, he should have been paid for thirty-four and one-quarter hours (34.27 hours) but instead was paid for only 34.16 hours.  Counter 56.1 Statement ¶¶ 39–44, 46, 48, 49, 51, 52, 54, 56.  In Plaintiff's words, "[s]ome weeks Espinal worked more than 40 hours, some weeks less; when he worked less than 40 hours, he was denied pay for any minutes of straight time short of a full hour, and when he worked more, he was denied pay for any minutes of overtime short of a full hour at 1.5 times his regular hourly rate."  Dkt. No. 115 at 9.

Counts II and III of the Third Amended Complaint, however, do not allege that Espinal's time was undercounted.  They allege that Espinal "was paid a flat hourly rate, irrespective of the total number of hours worked."  Dkt. No. 93 ¶ 83.  In particular, the Third Amended Complaint alleges that "[f]rom on or about January 03, 2016 to December 30, 2017, [Espinal] was paid a flat compensation at a rate of eleven dollars ($11.00) per hour," *id.* ¶ 84, that "[f]rom on or about December 31, 2017 to December 30, 2019, [Espinal] was paid a flat compensation at a rate of twelve dollars ($12.00) per hour for each hour worked, including for hours he worked in excess of forty (40) hours in a workweek," *id.* ¶ 85, that "[f]rom on or about December 30, 2019, to March 15, 2020, [Espinal] was paid a flat compensation at a rate of thirteen dollars ($13.00) per hour for each hour worked, including for hours he worked in excess of forty (40) hours in a workweek," *id.* ¶ 86, and that "[a]t all relevant times, [Espinal] was not paid overtime pay for overtime work," *id.* ¶ 87.  On the basis of those allegations, Espinal claimed that Defendants violated the FLSA and NYLL rules with respect to overtime pay.  *Id.* ¶¶ 114–127.

It is settled law that a "Plaintiff may not properly raise new allegations in his opposition to Defendants' motion for summary judgment." *Brutus v. Silverseal Corp.*, 2009 WL 4277077, at *1 n.2 (S.D.N.Y. Nov. 24, 2009). The reason for this rule is straightforward:

> Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant[s], courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.

*Id.* (internal quotation marks omitted) (quoting *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)); *see Santiago v. Axis Specialty U.S. Servs., Inc.*, 2021 WL 639527, at *12 n.3 (S.D.N.Y. Feb. 16, 2021) ("[A] party cannot raise new claims in a brief in opposition to summary judgment.").

Espinal filed his consent on January 3, 2022. Dkt. Nos. 65, 66. Plaintiffs filed a motion for leave to file a Third Amended Complaint and to add Espinal as a named plaintiff on March 25, 2022. Dkt. No. 84. Discovery closed on April 29, 2022, Dkt. No. 92 at 3, and Plaintiff filed their Third Amended Complaint on May 2, 2022, Dkt. No. 93. At that time, Plaintiffs had all the evidence that they now rely upon for the proposition that Espinal was not paid for all of his time, but they did not plead those facts as a violation of the FLSA and NYLL overtime rules. Trial is scheduled for February 6, 2023. Dkt. No. 100. Defendants were entitled to make their motion for summary judgment on the basis of the pleadings made by Espinal against them. They would be prejudiced by permitting Espinal to in effect amend the pleadings and defeat summary judgment on the basis of arguments and allegations as to which he gave Defendants no notice.

## IV. Defendants' Motion for an Order Decertifying the FLSA Collective

Defendants argue that the FLSA collective certified by the Court should be decertified because the FLSA collective has no members. Dkt. No. 108 at 20. Plaintiffs do not resist the

motion, noting that the single opt-in plaintiff who joined the case after the Court granted

conditional certification and authorized notice, is now "a named plaintiff in his own right

pursuing not merely FLSA but also NYLL claims" and that "there is no similarly-situated

analysis for the Court to do—Espinal's claims should be evaluated on their own merits."  Dkt.

No. 115 at 14.

Section 216(b) of the FLSA gives employees the "right to maintain a collective action

'for and in behalf of . . . themselves and other employees similarly situated.'"  *Scott v. Chipotle*

*Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) (quoting 29 U.S.C. § 216(b)).  If the other

employees who opt into the lawsuit are not "in fact 'similarly situated' to the named plaintiffs,"

the action will be decertified and the claims of the opt-in plaintiffs' dismissed without prejudice

so that they can pursue a FLSA action on their own.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555

(2d Cir. 2010).  It follows that if there are no persons other than the named plaintiffs in an action,

there can be no "similarly situated" opt-in plaintiffs and the action cannot proceed as a FLSA

collective.  Accordingly, the Court grants the motion and decertifies the collective.

**V.      Defendants' Motion for an Order Striking the Class Allegations**

Defendants move to strike the class allegations from the Complaint on the grounds that

any motion now to certify a class would be untimely.  Dkt. No. 108 at 18.  By minute entry dated

January 7, 2022, the Court set a deadline of February 22, 2022 for Plaintiffs to move for class

certification.  In the Court's April 25, 2022 Order, it noted that Plaintiffs did not move for class

certification by February 22, 2022 and that "[a]ny such motion would now be out of time."  Dkt.

No. 92 at 3 n.2.

"Class certification is to be decided at an early practicable time after the commencement

of a suit."  *Tecocoatzi-Ortiz v. Just Salad LLC*, 2022 WL 596831, at *17 (S.D.N.Y. Feb. 25,

2022) (internal quotation marks omitted) (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205,

215 (2d Cir. 2004)).  A motion for class certification can be denied as untimely "when the late timing of the determination may cause prejudice or unduly complicate the case."  *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (quoting 7AA Wright & Miller, Fed. Prac. & P. § 1785.3 (3d ed.)); *see Huang*, 2022 WL 1468450, at *8 (rejecting argument that class certification motion was untimely because case management plan did not impose a deadline for class certification).

Plaintiffs do not oppose the motion, asserting that "there are no class claims to dismiss." Dkt. No. 115 at 13.  Plaintiffs also do not identify any good cause for modifying the case management plan that imposed the February 22, 2022 deadline.  *See* Fed. R. Civ. P. 16(c). Discovery has long since concluded in this case and the parties should be preparing for trial.  A motion for class certification now would both prejudice Defendants and unduly complicate the trial.  *See Tecocoatzi-Ortiz*, 2022 WL 596831, at *17 (holding that class certification motion was untimely when made more than three years after action was filed, four months after fact discovery was closed, and after the deadline for the filing of dispositive motions); *Kapiti v. Kelly*, 2008 WL 3874310, at *3 (S.D.N.Y. Aug. 18, 2008) (holding that motion was "not merely untimely but prejudicially so" when made "nearly a year after the Complaint was filed and barely one month before the close of discovery . . . to seek leave to file a motion for class certification" (internal quotation marks and citation omitted)).  The motion is granted.

## VI.    Defendants' Motion for an Order Striking the Jury Demand

Plaintiffs' Third Amended Complaint contains a demand for a jury trial.  Dkt. No. 93 at 23.  None of their previous complaints contained jury demands.  *See* Dkt. Nos. 4, 24, 46.  In the parties' joint post-discovery letter, dated December 30, 2021, they advised the Court: "This case is not to be tried to a jury."  Dkt. No. 64 at 2.  Defendants move to strike the jury demand as untimely and prejudicial.

The Federal Rules of Civil Procedure impose time limits for the making of a jury demand.[4]  Federal Rule of Civil Procedure 38(b) provides,

> On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d).

Fed. R. Civ. P. 38(b).  "[A] jury demand is effective if indorsed on the pleadings and timely served and filed." *Chem. Bank v. Affiliated FM Ins. Co.*, 1994 WL 719681, at *6 (S.D.N.Y. Dec. 28, 1994).  Rule 39(a), in turn, provides that "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action." Fed. R. Civ. P. 39(a).  The rule is indifferent to the party making the demand.  *See id.*  Once one party has made a jury demand, no other party need make a second demand for the action to be designated "jury action" and in order to preserve its jury trial right.  *See Texas v. Penguin Grp. (USA) Inc.*, 2013 WL 1759567, at *6 (S.D.N.Y. Apr. 24, 2013) ("Once a proper jury demand is made, all other parties affected by the demand may also rely on it.").

By the same token, the jury trial right—if waived as to a particular issue—cannot be revived by the filing of a subsequent pleading raising the same issues.  *See Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir. 1981).  "The deadline for such a demand is 'no later than 14 days after the last pleading directed to the issue is served.'  Thus, where the timing is predicated on the amendment of a complaint, 'the right to demand a jury trial is revived . . . only if the amendment changes the issues.'"  *Chen v. Hunan Manor Enterps., Inc.*, 340 F.R.D. 85, 88 (S.D.N.Y. Jan. 27, 2022) (quoting *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2d Cir. 1973)).  Moreover, "if the

---

[4] Federal Rule of Civil Procedure 39(b) provides that any issue for which a jury trial has not been property demanded is to be tried by the court, except that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b).  Plaintiffs do not ask the Court to exercise its discretion under this rule.

purportedly new issues are simply artful rephrasings of existing issues, the original waiver will be enforced, for the party has already considered and forfeited his right to a jury." *Rosen*, 639 F.2d at 94. "[T]he term 'issue' means something more than the evidence offered and the legal theories pursued." *Id.*

The Third Amended Complaint asserts the same labor law claims on behalf of Chen and Cheng and the collective and class as the first three complaints filed in this action. Indeed, when the Court granted leave for Plaintiffs to file the Third Amended Complaint, it took care to limit the amendment to those FLSA and NYLL claims that were already in the case. *See* Dkt. No. 92. It rejected Plaintiffs' attempt to add additional claims that would not "involve 'the exact same evidence and discovery [as] those in the second amended complaint.'" Dkt. No. 92 at 12 (quoting Dkt. No. 86 at 8). There was no prejudice to Defendants in converting Espinal's status from an opt-in plaintiff to a named plaintiff. *Id.* at 7. "Thus, the Court . . . already concluded that the allegations added by the amended complaint fell into the same 'general area of dispute' raised in the original pleadings." *Chen*, 340 F.R.D. at 90. No party timely demanded a jury trial as to any of the issues raised in those earlier pleadings. Accordingly, Plaintiffs' time to demand a jury trial has expired and its jury trial right has been waived.

Plaintiffs argue that they are entitled to a jury trial because the Third Amended Complaint alleges several new causes of action on behalf of Plaintiffs that were not raised in earlier complaints, including failure to pay minimum wages and to pay wages "for some or all [] hours" under the NYLL, failure to pay spread-of-hours, and failure to provide accurate wage statements. Dkt. No. 115 at 15–16. But those claims were not permitted precisely because they would have caused prejudice to Defendants by being asserted at such a late date. *See supra* Section I. They thus cannot serve to revive the deadline for making a jury demand that has already expired.

The Third Amended Complaint also adds a new named plaintiff, Espinal, who was not previously a named plaintiff.  But the addition of Espinal as a named plaintiff does not raise a "new issue" and does not restore Plaintiffs' right to demand a jury.  The addition of a new party will review a right to a jury trial only when it alters the claims or the nature of the relief sought; "when the addition does not alter the claims or add new issues to the case, the right should not be revived."  8 Moore's Federal Practice—Civil § 38.50(8) (2022); *see also* 9 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2320 (4th ed.) ("[I]f the amended or supplemental pleading does not raise a new issue, but merely changes the theory of the case or the relief requested or the parties, then a jury trial right previously waived by a failure to make a demand connected to the original pleading is not revived."); *Chen*, 340 F.R.D. at 90 ("Courts consistently hold . . . that merely adding parties, without raising issues beyond those contained in the existing pleadings, does not rekindle a right to a jury trial that has previously been extinguished by waiver") (citing cases); *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*, 75 F. Supp. 2d 242, 245–46 (S.D.N.Y. 1999) ("the mere addition of parties does not change the underlying claims or the nature of the relief desired and, therefore, does not revive [a party's] right to a jury trial" (internal citations and quotations omitted)).

In this case, Espinal consented to be added to the case as an opt-in plaintiff and then chose to make a motion for permissive joinder under Rule 20.  He was not required to do so.  He was not a necessary party, and he could have pursued a standalone case with the jury trial right intact, if he had desired.  There thus is no unfair penalty in holding him to the waiver effected by the existing parties to the case; he assumed the jury-trial waiver by his voluntary act in joining the case.  Nor is there justification for reviving, on the part of Cheng and Chen, a right to demand a jury that they did not request in any of their prior three pleadings in this case.  Defendants were

entitled to assume, when Cheng and Chen did not timely request a jury trial, that the case would be tried to the Court and not to a jury on all issues embraced by those pleadings; Rule 38 protects this reasonable reliance. *See Rosen*, 639 F.2d at 87–88. To now grant Cheng and Chen a jury trial right that they knowingly forewent would not only confer on them a windfall but would also expose Defendants to undue and unwarranted prejudice.

## CONCLUSION

Defendants' motion for judgment on the pleadings and summary judgment and to strike the collective action allegations, the class action allegations, and the jury demand is granted.

The Clerk of Court is respectfully directed to close Dkt. No. 107.


SO ORDERED.

Dated: November 17, 2022
    New York, New York                               LEWIS J. LIMAN
                                        United States District Judge